**Kevin F. MACKEY, Plaintiff,**

v.

**CLEVELAND STATE UNIVERSITY, et al., Defendants.**

**No. 1:91 CV 1430.**

United States District Court, N.D. Ohio, E.D.

July 20, 1993.

---

Gary John Maxwell, Cleveland Works, Inc., Theodore E. Meckler, Meckler & Meckler, John H. Lawson, David B. Roth, Cleveland, OH, for plaintiff.

Steven S. Kaufman, Thomas L. Feher, Jack G. Day, Kaufman & Cumberland, Cleveland, OH, for defendants.

## ORDER

BATTISTI, District Judge.

Before the Court is Defendants' motion to dismiss, Plaintiff's response and Defendants' reply. For the following reasons, Defendants' motion is granted with regard to Counts One through Thirteen. Count Fourteen is dismissed with regard to the individual Defendants in their individual capacities. However, Defendants' Motion to Dismiss Count Fourteen is denied with regard to Cleveland State University and the individual Defendants in their official capacities.

## FACTS

The undisputed facts in this case are as follows. Plaintiff, Kevin Mackey ("Mackey") was employed as the Head Basketball Coach at Cleveland State University (the "University" or "CSU") from March 17, 1983 until the summer of 1990. He was not a tenured employee, but was under contract. A July 6 letter from University President John Flower notified Mackey that he had been recommended by the "appropriate University Officers" for a contract at Cleveland State University for the period from July 1, 1990 through June 30, 1992. Mackey accepted the offer of employment by signing and returning the letter on July 9, 1990.

On July 13, 1990 Mackey was arrested and charged with driving under the influence and having an open container. On July 17 Mackey held a press conference where he admitted that he had an alcohol problem which required treatment. Defendants John A. Flower ("Flower"), President, and Jan P. Muczyk ("Muczyk"), Provost and Vice Presi-

dent for Academic and Student Affairs of the University, held another press conference on July 19 announcing that Mackey's employment at CSU had been terminated. That press conference was followed by a letter dated July 24, in which Defendants' counsel notified Mackey's counsel that Mackey would no longer be employed by the University.

On August 11, 1990 a Grand Jury returned indictments on the charges of drug abuse (cocaine) and driving while intoxicated based on the events of the evening of July 13. Mackey received treatment in lieu of conviction pursuant to O.R.C. § 2951.041. He successfully completed treatment and on October 23, 1991 the proceedings against him were dismissed.

Mackey brought the present action against Cleveland State University, nine members of the Board of Trustees individually and in their official capacities (the "Trustees"), President of the University John A. Flower ("Flower"), Provost and Vice President for Academic and Student Affairs Jan P. Muczyk ("Muczyk"), and Director of Athletics John Konstantinos ("Konstantinos") individually and in their official capacities.

Mackey alleges the following federal claims: violations of 42 U.S.C. §§ 1983, 1985(3), 1986, and 29 U.S.C. § 701 et seq. (the "Rehabilitation Act"). In addition, Mackey asserts ten state law claims.

Plaintiff's § 1983 claims against Cleveland State University seeking damages are dismissed since CSU is immune from suit in federal court under the Eleventh Amendment. Likewise, the § 1983 claims for retrospective relief against the Trustees, Flower, Muczyk and Konstantinos in their official capacities are dismissed based on Eleventh Amendment immunity. The claims against the Trustees, Flower, Muczyk and Konstantinos in their individual capacities are dismissed based on qualified immunity. Furthermore, all § 1983 claims, including Plaintiff's action for injunctive relief, are dismissed for failure to state a claim. Likewise, Plaintiff's § 1985(3) and § 1986 actions are dismissed for failure to state a claim upon which relief may be granted. Plaintiff's state law claims are dismissed. Finally, the Rehabilitation Act claim is dismissed only with regard to the individual defendants in their individual capacities based on qualified immunity. As to the other Defendants, the motion to dismiss Count 14 is denied.

## LAW

The Sixth Circuit has set forth the following standards for the dismissal of a plaintiff's complaint:

> In cases involving the dismissal of a complaint, the complaint is to be construed in the light most favorable to the plaintiff and its allegations taken as true. The complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Lee v. Western Reserve Psychiatric Habilitation Center, 747 F.2d 1062, 1065 (6th Cir. 1984) (citations omitted). "However, we need not accept as true legal conclusions or unwarranted factual inferences." Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir.1987).

Defendants seek dismissal pursuant to Fed.R.Civ.P. 12(b)(1), (2) and (6). Rule 12(b)(1) provides for dismissal for lack of jurisdiction over the subject matter, while Rule 12(b)(2) deals with lack of jurisdiction over the person. Rule 12(b)(6) addresses the failure to state a claim upon which relief can be granted.

■ Defendants provided an assortment of materials outside the pleadings. "If, on a motion asserting the defense numbered (6) to dismiss ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. ..." Fed.R.Civ.P. 12(b). However, whether to proceed as a motion for summary judgment is within the discretion of the Court. See 2A James Wm. Moore, Moore's Federal Practice § 12.09[3] (1992). The Court places no reliance on the additional materials. Therefore, the matter before the Court will be treated only as a motion to dismiss, and not a motion for summary judgment.

### A. § 1983 CLAIM

■ To successfully state a claim under 42 U.S.C. § 1983, Mackey must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law. *Russo v. City of Cincinnati*, 953 F.2d 1036 (6th Cir. 1992) (citing *West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)).[1] "It is not enough for a complaint under § 1983 to contain mere conclusory allegation of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings." *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir.1986) (citing, *Place v. Shepherd*, 446 F.2d 1239 (6th Cir.1971)). Once Defendants have challenged Mackey's complaint based on a failure to plead facts specific enough to support a claim of unconstitutionality, " '[P]laintiffs must produce some factual support for their claim to avert dismissal.' " *Id.* (quoting *Hobson v. Wilson*, 737 F.2d 1, 30 (D.C.Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985)).

In his first claim for relief, Mackey alleges that "Plaintiff was denied employment and other property interests by Defendants without due process of law. Said wrongful acts, conduct and omissions by Defendants are violative of the civil rights of Plaintiff, including those guaranteed by 42 U.S.C. Section 1983, and the aforementioned Constitutional provisions." (Amended Complaint, ¶¶ 20, 21). Mackey does not elucidate what property interests, other than employment, are implicated. There does not appear to be a dispute over the issue of whether Defendants were acting under color of state law.

The Due Process clause of the Fourteenth Amendment protects against the deprivation of life, liberty and property without due process of the law. U.S. Const., 14 Amend.; *see Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538 n. 3, 105 S.Ct. 1487, 1491 n. 3, 84 L.Ed.2d 494 (1985). Contractual rights, such as Mackey's employment contract, "are a species of property within the meaning of the Due Process Clause." *Charles v. Baesler*, 910 F.2d 1349, 1352 (6th Cir.1990) (citing *Perry v. Sindermann*, 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972)). "In any due process case, after the plaintiff establishes deprivation of life, liberty or property, 'the question remains what process is due.' " *Charles*, 910 F.2d at 1352 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)).

■ The Due Process clause may impose procedural or substantive limitations on a given deprivation, or both. *See Loudermill*, 470 U.S. at 541, 105 S.Ct. at 1492. However, the Court will restrict its discussion to procedural due process in the case at hand. The Sixth Circuit has found that a breach of contract by a public employer does not give rise to a § 1983 claim for violations of substantive due process *Holthaus v. Bd. of Pub. Educ., Cincinnati Pub. Sch.*, 986 F.2d 1044 (6th Cir.1993); *Charles*, 910 F.2d at 1353 (6th Cir.1990) (holding that a public employee has no substantive due process right to a promotion); *Ramsey v. Bd. of Educ. of Whitley County*, 844 F.2d 1268 (6th Cir.1988). Specifically, the Sixth Circuit has held that a claim of improper discharge of a public employee cannot be brought as a violation of substantive due process even where the employment contract provides that the employee could only be discharged for just cause. *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1351 (6th Cir.1992) (a public employee's "state-created right to tenured employment lacks substantive due process protection"). Rather than a constitutional violation, the matter was viewed as a simple breach of contract claim. "Absent the infringement of some 'fundamental' right, it would appear that termination of public employment does not constitute a denial of substantive due process." *Sutton*, 958 F.2d at

---

1. Title 42 U.S.C. § 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress....

1351. Thus, Mackey has not stated a claim for a substantive due process violation.

Defendants have responded to the allegations of violations of procedural due process by claiming that they enjoy either absolute or qualified immunity from suit in federal court.

## 1. ELEVENTH AMENDMENT IMMUNITY

 Defendants assert that they are immune from suit in this court pursuant to the Eleventh Amendment to the United States Constitution.[2] Any action for retrospective relief against a state in federal court is barred by the Eleventh Amendment. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984); *Ex Parte Young*, 209 U.S. 123, 150, 28 S.Ct. 441, 450, 52 L.Ed. 714 (1908). This applies to suits brought by citizens of the state being sued as well as by citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974). Absent state waiver or congressional override, a federal court is without jurisdiction to hear a claim against a state. *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1984) (citing *Ford Motor Co. v. Dept. of Treasury of Indiana*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945)); *Cowan v. Univ. of Louisville School of Medicine*, 900 F.2d 936, 941 (6th Cir.1990) (citations omitted).

 The State of Ohio has not waived its Eleventh Amendment immunity. Waiver is only found "where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662 (1974) (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)). A state maintains Eleventh Amendment immunity from suit in federal court even though it has waived its immunity from liability and consented to be sued in its own courts. *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 465, 65 S.Ct. 347, 351, 89 L.Ed. 389 (1945). The State of Ohio has waived its immunity from suit and consented to having its liability determined by the state Court of Claims. O.R.C. § 2743.02(A)(1). However, § 2743.02(A)(1) is not a waiver of immunity from suit in federal court. *Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir.1985), *cert. denied*, 474 U.S. 824, 106 S.Ct. 79, 88 L.Ed.2d 65 (1985); *Harley v. Carman*, 585 F.Supp. 1353 (N.D.Ohio 1984). Likewise, enactment by the Ohio legislature of § 4112.01 *et seq.*, the anti-discrimination statute, did not explicitly abrogate the state's Eleventh Amendment immunity from suit in federal court. It simply authorized suit of the state as employer in a court of competent jurisdiction, which in Ohio is limited to the Court of Claims. *See* O.R.C. chapter 2743.

 Similarly, congressional abrogation of Eleventh Amendment immunity must be explicit. *Quern v. Jordan*, 440 U.S. 332, 344, 99 S.Ct. 1139, 1147, 59 L.Ed.2d 358 (1979); *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). It has been established that Congress did not intend to abrogate states' immunity when it enacted § 1983. *Quern*, 440 U.S. at 345, 99 S.Ct. at 1147 (1979); *Edleman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347 (1974).

The Eleventh Amendment protects state agencies where the entity is an "arm or alter ego of the state." *Hall v. Medical College of Ohio*, 742 F.2d 299, 301 (6th Cir.1984), *cert. denied*, 469 U.S. 1113, 105 S.Ct. 796, 83 L.Ed.2d 789 (1985); *see also Pennhurst*, 465 U.S. at 100, 104 S.Ct. at 907. "The great majority of cases addressing the question of Eleventh Amendment immunity for public colleges and universities have found such institutions to be arms of their respective state governments, and thus immune from suit." *Hall*, 742 F.2d at 301 (citations omitted); *see An-ti Chai v. Michigan Technological University*, 493 F.Supp. 1137 (W.D.Mich.1980);

---

**2.** The Eleventh Amendment provides:

 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State.

*Bailey v. Ohio State University,* 487 F.Supp. 601 (S.D.Ohio 1980).

 Cleveland State University has been found to be an "arm or alter ego of the state." *Breckenridge v. Mitchell,* 1991 U.S.App. LEXIS 83–3317, at *2 (6th Cir. April 27, 1984). The University is defined by statute as a state university. O.R.C. § 3345.-011. It came into existence by virtue of a legislative enactment. O.R.C. § 3344.01. Its powers and authority are dictated by statute, and the state maintains a high degree of control over the finances of the University. *See* O.R.C. § 3345.12. Thus, the nature and status of CSU is as an arm of the state. Furthermore, it appears that any judgment against CSU would be paid out of state coffers. Therefore, the University is immune from suit for damages in federal court.

 Just as the state itself may not be sued in federal court, suits against state officers are barred where the state is the real party in interest, and public funds would be used to satisfy a judgment. *Edleman v. Jordan,* 415 U.S. at 663, 94 S.Ct. at 1355; *Pennhurst,* 465 U.S. at 101, 104 S.Ct. at 908. Therefore, Mackey's claims for damages against the Board of Trustees, Flower, Muczyk and Konstantinos in their official capacities are dismissed from this action since judgment against them in their official capacities for damages would be paid out of state coffers.

 Where the relief sought is prospective in nature suits against the state or state officials in their official capacities are permissible. *Edelman v. Jordan,* 415 U.S. 651, 667–68, 94 S.Ct. 1347, 1357–58, 39 L.Ed.2d 662 (1974); *Pennhurst,* 465 U.S. at 102, 104 S.Ct. at 908; *Ex Parte Young,* 209 U.S. at 150, 28 S.Ct. at 450. *Ex Parte Young* recognized that expenditure of State funds may be required by a prospective court decree without violating the Eleventh Amendment, even if the relief has an ancillary effect on the state treasury. In addition, the Supreme Court created the legal fiction that a future injunction against a state official acting in an unconstitutional manner is not barred by the Eleventh Amendment because the official so acting no longer represents the state. Thus, while an action for damages against CSU and the individual defendants in their official capacities is barred by the Eleventh Amendment, immunity does not extend to suits for prospective relief. In the instant action, Mackey has requested such prospective relief in the form of reinstatement. (Amended Complaint, p. 17). Therefore, the claims against CSU, and the Trustees, Flower, Muczyk and Konstantinos in their official capacities seeking reinstatement are not barred by the Eleventh Amendment. These claims will be more fully discussed below.

 Finally, the Eleventh Amendment presents no bar to suits against state officials sued as individuals. *Hafer v. Melo,* —— U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). This applies to suits for either damages or injunctive relief.

### 2. QUALIFIED IMMUNITY

The doctrine of qualified immunity may operate to protect state officials sued as individuals in civil rights actions. That is, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Peek v. Mitchell,* 419 F.2d 575, 578 (6th Cir.1970). "The relevant inquiry focuses on whether a reasonable official in the defendant's position could have believed his conduct to be lawful, considering the state of the law as it existed when the defendant took his challenged actions." *Poe v. Haydon,* 853 F.2d 418, 423 (6th Cir.1988), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989), *quoted in Henry v. Metropolitan Sewer District,* 922 F.2d 332, 339 (6th Cir.1990).

The Sixth Circuit has stated that:

[t]he right in question ... cannot be simply a generalized right, like the right to due process. *It must be clearly established in a "particularized" sense, so that "the contours of the right" are clear enough for any reasonable official in the defendants' position to know that what the*

*official is doing violates that right.* This particularity requirement does not mean that the very action in question has been held unlawful; it does mean, though, that in the light of the preexisting law, the illegality of the action must be apparent. *Danese v. Asman,* 875 F.2d 1239, 1242 (6th Cir.1989), *cert. denied,* 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 610 (1990) (citations omitted) (emphasis added).

To determine whether Mackey's due process rights were clearly established, the court should look to "federal constitutional, statutory or case law existing at the time." *Dominique v. Telb,* 831 F.2d 673, 677 (6th Cir.1987). The court should examine "the decisions of the Supreme Court and the courts of this circuit." *Poe,* 853 F.2d at 424 (citation omitted). If case law from these sources is unavailable, the court may also look to decisions from other circuits for guidance. *Id.* (citation omitted).

 Once a defendant raises the qualified immunity defense, the plaintiff must produce additional facts or allegations demonstrating that his constitutional rights were violated and "that these rights were so clearly established that any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct." *Dominique,* 831 F.2d at 676. The defendant is not required to prove that his conduct did not violate clearly established law. *Id.* at 677. Furthermore, "whether the law at the time of the alleged action was clearly established in favor of the plaintiff is a purely legal question." *Id.*

### a. Procedural Due Process— Property Interest

 It was reasonable for Flower, Muczyk, Konstantinos and the Trustees in their individual capacities to have believed that their actions in firing Mackey were in keeping with due process requirements; thus, they enjoy qualified immunity from suit. To establish a due process violation, a plaintiff must prove that he was deprived of a property or liberty interest by a party acting under color of state law without some sort of hearing. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). "In this Circuit, ... a § 1983 plaintiff may prevail on a procedural due process claim by either (1) demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him of property pursuant to a 'random and unauthorized act' *and* that available state remedies would not adequately compensate for the loss." *Macene v. MJW, Inc.,* 951 F.2d 700, 706 (6th Cir.1991) (citations omitted).

Mackey has asserted that he was denied "employment and other property interests" without due process by Defendants. (Amended Complaint, ¶ 20). The Supreme Court has recognized a property interest in continuing employment for contract employees.[3] *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (citation omitted) (acknowledging that "college professors and staff members dismissed during the terms of their contracts ... have interests in continued employment that are safeguarded by due process"); *see also Duncan v. City of Oneida,* 735 F.2d 998, 1000 (6th Cir.1984). Mackey had a two-year employment contract, thus a valid property interest in his employment.[4] He was deprived of that property interest when he was discharged.

 "Once it is determined that the due process clause applies, we are then faced with the question of what process is due ... and particularly, whether a federal cause of

---

**3.** Mackey's contract renewal specifically states that his position was not eligible for tenure.

**4.** The July 24, 1990 letter from the Office of the University Legal Counsel stated, "This is to confirm that it is the position of Cleveland State University that Mr. Mackey's contract rights terminated on June 30, 1990." However, in their Second Motion to Dismiss, Defendants changed their position, noting that "A new contract was negotiated between the University and Mackey, and general agreement on its terms was reached on July 1, 1990." (Motion to Dismiss Amended Complaint, p. 7). Therefore, the Court will treat as undisputed the fact that a new employment contract was in effect when Mackey was discharged.

action is the appropriate remedy for plaintiffs' deprivation." *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1349 (6th Cir.1992) (citations omitted). Whether a pre-termination hearing is required is determined by balancing the competing interests at stake, which include "the private interest in retaining employment, the governmental interest in expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination." *Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493 (citing *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)). The private interest in retaining employment is recognized as extremely important. *Id.*

■ Some type of hearing is valuable because it helps reach an accurate decision.[5] However, a pre-termination hearing is not required in all circumstances. A state provided post-deprivation remedy can satisfy the requirements of the Due Process Clause. *Parratt v. Taylor,* 451 U.S. 527, 538, 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420 (1981) (finding state tort remedies as redress for property deprivation sufficient to satisfy the Due Process clause). "[T]he necessity of quick action by the State or the impracticality of providing any meaningful pre-deprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." *Id.* at 539, 105 S.Ct. at 1491.

■ The Supreme Court explained that "unauthorized intentional deprivation of

property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984). However, "postdeprivation remedies do not satisfy due process where a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized action." *Id.* at 532, 104 S.Ct. at 3202. That is, a federal hearing is not necessary to redress a procedural due process violation caused by random and unauthorized action if a state court hearing is available to correct the error. *Vicory v. Walton,* 721 F.2d 1062, 1065 (6th Cir.1983), *cert. denied,* 469 U.S. 834, 105 S.Ct. 125, 83 L.Ed.2d 67 (1984). The plaintiff must plead and prove that state remedies for redressing the wrong are inadequate. *Id.*

In the case at hand, no state procedures were established to govern the case of a discharge of a Cleveland State University contract employee under the circumstances of Mackey's discharge. Mackey claims that Defendants "failed to conduct any type of hearing, whatsoever, prior to Plaintiff's dismissal, as required by O.R.C. Section 3345.22 and Cleveland State University Personnel Policy 8.1.15 ... and the United States and Ohio Constitutions." (Amended Complaint, ¶ 16).[6] However, those sections do not apply to situations such as Mackey's. Section 3345.22 and University Personnel Policy 8.1.15 establish procedures to be followed in the event an employee is arrested or convicted of a violent crime.[7]

---

5. "Dismissals for cause will often involve factual disputes ... Even where the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect." *Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493 (citations omitted). This hearing "need not be elaborate ... 'something less' than a full evidentiary hearing is sufficient." *Id.* at 545, 105 S.Ct. at 1495 (citations omitted). The purpose of the pre-termination is simply an "initial check against mistaken decisions." *Id.*

6. In his Brief in Opposition, Mackey claims that his plain words in the Amended Complaint were

"not meant to suggest that Defendants were required by O.R.C. Sec. 3345.22 and CSU Personnel Policy Manual 8.1.15 to conduct a due process hearing prior to terminating Plaintiff." (Brief in Opposition, p. 31). Mackey asserts that his reference to those sections was an attempt to provide an example of the type of procedures that would be adequate. Regardless of the intended meaning of the Amended Complaint, no state procedures exist to govern the discharge of a CSU employee or staff member.

7. Cleveland State Personnel Policy is a reprint of the provisions of O.R.C. § 3345.22. Section 3345.22 establishes procedures to be followed in the event that a faculty or staff member is arrest-

In fact, no procedures are prescribed by statute for the University regarding personnel matters outside those addressed in § 3345.22. Rather, "[t]he board of trustees of Cleveland state university shall employ, fix the compensation of, and remove the president and such number of professors, teachers, and other employees as may be deemed necessary." O.R.C. § 3344.03. Since no state procedures existed, Mackey cannot claim that Defendants acted pursuant to established state procedure. As such, this action falls into the *Parratt* and *Vicory* line of cases, requiring plaintiff to show that state remedies for redressing the alleged wrong are inadequate, which Mackey has not done. Mackey has not even alleged that state remedies will not suffice, and it appears that suit in the state Court of Claims would effectively redress the alleged wrong done to Mackey when he was terminated.

The law at the time of Mackey's discharge was clear. He had no right to a pre-deprivation hearing if postdeprivation procedures, such as a state cause of action, were available. Mackey has not alleged that the state remedy of suit in the state Court of Claims is inadequate. It appears that suit in that forum would be sufficient to redress Plaintiff's alleged wrong. The state has consented to suit there. If Mackey decides to proceed against the individuals, the Court of Claims will determine whether they are immune from suit.

As stated above, once a defendant raises the qualified immunity defense, the plaintiff must produce additional facts or allegations demonstrating that his constitutional rights were violated and "that these rights were so clearly established that any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct." *Dominique*, 831 F.2d at 676. An officer in the Defendants' positions would have reasonably understood that there was no affirmative constitutional duty to provide a pre-termination hearing, particularly

in light of the existing adequate state remedy. Furthermore, the law is clear that Mackey bore the burden of pleading that remedy in state court was insufficient, which he did not do. Therefore, the Defendants, in their individual capacities, enjoy qualified immunity from suit. As such, Plaintiff's claim that he was deprived of his property rights without due process by the Trustees, Flower, Muczyk, and Konstantinos in their individual capacities is dismissed.

### b. Procedural Due Process— Liberty Interest

It is unclear from his Amended Complaint whether Mackey is also alleging that he was denied a liberty interest without due process of law. In his Motion in Opposition, Mackey claims that he has a liberty interest in pursuing a career or livelihood, and the deprivation of that interest amounts to a violation of substantive due process. (Motion in Opposition, p. 38).

It is possible to state a claim for a violation of procedural due process stemming from the deprivation of a liberty interest. The term "liberty interest" extends beyond mere freedom from physical restraint. *Bd. of Regents v. Roth*, 408 U.S. 564, 572, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). " 'Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' " *Id.* at 573, 92 S.Ct. at 2702 (citations omitted). Due process requires that the employee be given an opportunity to refute the charges before University officials and clear his name. *Id.* Damage to reputation is only recognized as a potential constitutional deprivation requiring due process where the damage is alleged to accompany the government's denial of a more tangible interest, such as a property interest in employment. *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976); *see also Bd. of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Furthermore,

---

ed "for any offense covered by division (D) of section 3345.23." Section 3345.23(D) provides: "[w]ithout limiting the grounds for dismissal, suspension, or other disciplinary action against a ... faculty or staff member ... the commission

of an offense of violence as defined in division (I)(1) of section 2901.01 of the Revised Code ... is cause for dismissal pursuant to this section or for suspension pursuant to section 3345.22." Section 2901.01 defines crimes of violence.

the Sixth Circuit has stated that a nontenured employee has a right to some type of name clearing hearing only if he "shows he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment." *Burkhart v. Randles*, 764 F.2d 1196, 1201 (6th Cir.1985) (citing *Codd v. Velger*, 429 U.S. 624, 627–28, 97 S.Ct. 882, 883–85, 51 L.Ed.2d 92 (1977) and *Kendall v. Board of Ed. of Memphis City*, 627 F.2d 1, 5 (6th Cir.1980)).

■ Viewing the facts in the light most favorable to Mackey, it appears he publicly tarnished his own reputation. Plaintiff held his own press conference on July 17 where he disclosed his alcoholism, two days before Defendants' press conference announcing Mackey's termination. The University and its officials did not "take" Mackey's good reputation, therefore no process was due. Furthermore, since there was no deprivation of a property interest without due process, damage to Mackey's reputation is not recognized as a constitutional deprivation. Finally, Mackey has not claimed that the University officials spoke of him falsely. Defendants' conduct, as alleged by Mackey in his Amended Complaint, did not violate clearly established constitutional rights. They are entitled to qualified immunity on the question of whether Mackey's procedural due process rights were violated regarding the loss of his good reputation.

### 3. SUBSTANTIVE MERITS

As noted above, the University and the Trustees, Flower, Muczyk, and Konstantinos in their official capacities are not immune from suit under the Eleventh Amendment regarding Mackey's claim for reinstatement. However, Mackey has not stated a claim for a § 1983 violation since he has not alleged that he was deprived of a constitutional right by a person acting under color of state law. Therefore, all of Plaintiff's § 1983 claims, including those seeking injunctive relief, are dismissed for failure to state a claim.

In the Sixth Circuit, a federal hearing is not necessary to redress an alleged procedural due process violation if a state court hearing is available to correct the error. *Vi-*

*cory v. Walton*, 721 F.2d 1062, 1065 (6th Cir.1983), cert. denied, 469 U.S. 834, 105 S.Ct. 125, 83 L.Ed.2d 67 (1984). That is, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate. *Id.* Mackey has not done this. As addressed comprehensively above, he has not presented a violation of his due process rights; therefore, he has not stated a claim under § 1983. As such, the action against the University and the individual defendants in their official capacities seeking injunctive relief is dismissed.

### B. § 1985 CLAIM

■ Plaintiff asserts that "Defendants conspired for the purpose of depriving Plaintiff of the rights guaranteed to him under the Fifth, Ninth and Fourteenth Amendments to the United States Constitution in violation of Title 42 U.S.C. § 1985(3)." (Amended Complaint, ¶ 26). Section 1985(3) imposes civil liability for participating in a conspiracy intended to deprive, "either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3).

"[I]n order to prove a private conspiracy in violation of the first clause of § 1985(3) a plaintiff must show, *inter alia*, (1) that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' actions,' and (2) that the conspiracy 'aimed at interfering with the rights' that are 'protected against private, as well as official, encroachment.'" *Bray v. Alexandria Women's Health Clinic*, —— U.S. ——, 113 S.Ct. 753, 758, 122 L.Ed.2d 34 (1993) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) and *Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)). Although the Supreme Court has not defined what type of "otherwise class-based animus" would support a § 1985 claim, in *Bray* the Court stated that "[w]hatever may be the precise meaning of a 'class' for purposes of *Griffin's* speculative extension of § 1985(3) beyond race the term unquestionably connotes something more than a group of individuals who share a

desire to engage in conduct that the § 1985(3) defendant disfavors." *Bray*, —— U.S. at ——, 113 S.Ct. at 759.

Mackey has not alleged that he is the member of a cognizable class, nor has he indicated how a class-based animus motivated the alleged conspirators' decision to fire him. Therefore, Mackey has failed to state a claim under § 1985(3). Defendants' Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and is granted with regard to all Defendants on the § 1985(3) claim.

### C. *§ 1986 CLAIM*

■ Plaintiff asserts that:

Defendants, Flower, Muczyk, Konstantinos and Trustees, by reason of their knowledge of the unlawful activity of the Defendants and further by reason of their intentional and reckless failure to exercise supervisory or other available an lawful restraint upon the other named Defendants so as to prevent or aid in preventing the deprivation of Plaintiff's rights as hereinbefore set forth did act in violation of Title 42 U.S.C. Section 1986 and the aforementioned Constitutional provisions.

(Amended Complaint, ¶ 31).

Section 1986 provides that "every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, . . . for all damages caused by such wrongful acts, which such person of reasonable diligence could have prevented." 42 U.S.C. § 1986.

A violation of § 1986 requires the necessary prerequisite of a violation of § 1985. *Boddie v. American Broadcasting Companies, Inc.*, 694 F.Supp. 1304 (N.D.Ohio 1988), *aff'd*, 881 F.2d 267 (6th Cir.1989) (citing *Browder v. Tipton*, 630 F.2d 1149, 1155 (6th Cir.1980) and *Hahn v. Sargent*, 523 F.2d 461 (1st Cir.1975)). Because Mackey has failed to state a claim under § 1985(3), his claim for relief under § 1986 is dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

### D. *§ 1988 CLAIM*

■ Mackey alleges in his First Claim for Relief that he is "entitled to his costs, expenses and attorney fees herein pursuant to 42 U.S.C. Section 1988." (Amended Complaint, ¶ 24). Section 1988 grants the court the discretion to allow the prevailing party (other than the United States) in a § 1983, § 1985 or § 1986 action "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. "[L]iability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against the defendant." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3104, 87 L.Ed.2d 114 (1985).

Since the defendants in the instant action have not been prevailed against in the § 1983, § 1985(3) or § 1986 actions, § 1988 does not authorize the Court to award attorney's fees to Plaintiff.

### E. *STATE LAW CLAIMS*

■ Plaintiff raises ten state law claims against the defendants. As has been determined, Cleveland State University is an arm of the state. The state has consented to suit only in the Court of Claims for determination of its liability under state law. O.R.C. § 2743.02(A)(1). Therefore, this is not the proper court to address questions of Cleveland State's liability under state law.

Furthermore, the Court of Claims Act provides that the Court of Claims has "exclusive, original jurisdiction to determine, initially, whether the [state] officer or employee is entitled to personal immunity under section 9.86 of the Revised Code. . . ." O.R.C. § 2743.02(F). Thus, this court is not in a position to determine whether the Trustees, Flower, Muczyk, or Konstantinos are immune from suit on Mackey's state law claims. "Until the Ohio Court of Claims determines that they are not immune, there is no cause of action cognizable under Ohio law over which the district court can assert pendent jurisdiction. A federal court exercising pendent jurisdiction sits as a court of the forum state and is bound to apply its substantive

law." *Haynes v. Marshall,* 887 F.2d 700, 705 (6th Cir.1989). Thus, a necessary prerequisite to the suit of state employees is a determination by the Court of Claims that the employees are not immune.

This Court is without jurisdiction to determine Plaintiff's state law claims. For the foregoing reasons, all of Plaintiff's state law claims are dismissed without prejudice.

### F. *REHABILITATION ACT CLAIM (29 U.S.C. § 794)*

Mackey's final claim for relief charges that:

> Defendant Cleveland State University is a recipient of federal financial assistance. Plaintiff Mackey was denied benefits of various aspects of his employment at Cleveland State University by reason of his handicap. Plaintiff's alcoholism is a handicapped condition under the Federal Rehabilitation Act, 29 U.S.C. [sic] 701 *et seq.* Plaintiff suffered damages as a result of Defendants' discriminatory acts in the manner set forth above.

(Amended Complaint, ¶¶ 80–83). Mackey has alleged a prima facie case under the Rehabilitation Act.

Section 504 of the Rehabilitation Act of 1973 provides that "no otherwise qualified individual with handicaps ... shall, solely by reason of her or his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794 (as amended 1986). The Rehabilitation Act has been interpreted to mean "that mere possession of a handicap is not a permissible

ground for assuming an inability to function in a particular context." *Southeastern Community College v. Davis,* 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979).

Congress expressly abrogated states' Eleventh Amendment immunity with regard to the Rehabilitation Act. 42 U.S.C. § 2000d–7(a)(1). Therefore, Cleveland State University and its employees sued in their official capacities do not possess Eleventh Amendment immunity from suit in federal court for violations of the Rehabilitation Act. Qualified immunity is available to the Trustees, Flower, Muczyk, and Konstantinos in their individual capacities since their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Mackey's rights under the Act as a current alcohol abuser were not clearly established.

To establish a prima facie case [8] of wrongful termination under the Rehabilitation Act the plaintiff must establish: 1) that he is a handicapped person under the Act; 2) that he is otherwise qualified; 3) that he is being subjected to discrimination solely by reason of his handicap; and, 4) that the relevant program or activity receives federal financial assistance. *Doherty v. Southern College of Optometry,* 862 F.2d 570, 573 (6th Cir.1988). Coverage under the Act extends to an entire college or university when any part of the school receives federal financial assistance. 29 U.S.C. § 794(b).

Mackey must satisfy the threshold requirement that he is an individual with handicaps. *Jasany v. United States Postal*

---

**8.** Once the plaintiff has established a prima facie case by a preponderance of the evidence, the burden shifts to the defendant to prove that plaintiff was not an otherwise qualified handicapped person, or that his exclusion from a federally funded program was for reasons other than his handicap. *Jasany v. United States Postal Service,* 755 F.2d 1244, 1250 n. 5 (6th Cir.1985) (citing *Pushkin v. Regents of University of Colorado,* 658 F.2d 1372 (10th Cir.1981); *see also Pendleton v. Jefferson Local School District* (6th Cir. 1992) 1992 WL 57421, 1992 US APP Lexis 6294 (adopting the shifting burdens of proof used in *McDonnell–Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas*

*Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the employer acknowledges the it relied on plaintiff's handicap in terminating plaintiff, "the employer is required to rebut the inference that the handicap was improperly considered by demonstrating that it was relevant to the job qualifications." *Teahan v. Metro–North Commuter R. Co.,* 951 F.2d 511, 515 (2d Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 54, 121 L.Ed.2d 24 (1992) (citations omitted). The plaintiff bears the ultimate burden of proving that he is qualified in spite of his handicap and that he was fired solely because of his handicap. *Id.*

*Service,* 755 F.2d 1244, 1248 (6th Cir.1985); *Scharff v. Frank,* 791 F.Supp. 182, 184 (S.D.Ohio 1991). An individual with handicaps is defined as a person who "(1) has a physical or mental impairment which substantially limits one or more of his major life activities,[9] or (2) has a record of such an impairment, or (3) is regarded as having such an impairment." § 706(8)(B).

■ Mackey's allegation that he is an alcoholic entitled to protection under the Act satisfies the first element of a prima facie case. Defendants' assertion that the Act protects only alcoholics who are recovered or currently undergoing treatment is not well taken. Alcoholism has been accepted as a handicap for purposes of the Act. *Crewe v. U.S. Office of Personnel Management,* 834 F.2d 140, 141 (8th Cir.1987). However, the statute does not protect all alcoholics. At the time Mackey was fired, the definition of an individual with handicaps did not include "any individual who is an alcoholic or drug abuser whose current use of alcohol or drugs prevents such individual from performing the duties of the job in question or whose employment, by reason of such current alcohol or drug abuse, would constitute a direct threat to property or the safety of others." [10] 29 U.S.C. § 706(8)(B) (as amended in 1986);

*see also* 34 C.F.R. § 104.3(j). This exception applies only to § 793 and § 794.

The language of the statute seems to indicate that a current alcoholic may qualify as an individual with handicaps.[11] *See Simpson v. Reynolds Metals Co., Inc.,* 629 F.2d 1226, 1231 n. 8 (7th Cir.1980). It must be determined "whether the employee's substance abuse problem is severe and recent enough so that the employer is justified in believing that the employee is unable to perform the essential duties of his job." *Teahan v. Metro–North Commuter R. Co.,* 951 F.2d 511, 520 (2d Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 54, 121 L.Ed.2d 24 (1992) (recognizing that "it is clear that substance abuse is a 'handicap' for purposes of the Rehabilitation Act.... [yet] we must be wary lest § 504 [§ 794] be applied as a haven to protect substance abusers who have not in the past sought—nor do they seek in the present— help." (citations omitted)).

■ In assessing whether an employee is a current substance abuser for the purposes of § 706(8)(B), it is necessary to determine how the conduct that is a manifestation or symptom of the handicap "bears upon the employee's ability to perform the essential duties of his job." *Id.* If the employer can

9. The term "major life activities" means "functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Scharff v. Frank,* 791 F.Supp. at 184 (citing 29 C.F.R. 1613.702(c)). An impairment that limits only a particular job or a narrow range of jobs does not substantially limit the major life activities of an impaired individual. *Jasany,* 755 F.2d at 1249 n. 3.

10. In 1990 the definition of "individual with handicaps" was amended. While the 1990 amendments affected the definition of "individual with handicaps" as it relates to current users of drugs, it remains the same with regard to alcoholics. The 1990 amendments provide:

the term 'individual with handicaps' does not include any individual who is an alcoholic whose current use of alcohol prevents such individual from performing the duties of the job in question or whose employment, by reason of such current alcohol abuse, would constitute a direct threat to property or the safety of others.

29 U.S.C. § 706(8)(C)(v) (as amended in 1990).

11. The statute indicates that alcoholism triggers the protection of the Act unless it renders the

individual incapable of meeting the requirements of his job, or poses a direct threat to the safety or property of others. The legislative history concurs with this interpretation.

This amendment is designed to clear up some misunderstandings about the employment rights of alcoholics and drug addicts under the act, and to make absolutely clear that employers covered by the act must not discriminate against those persons having a history *or condition* of alcoholism or drug abuse who are qualified for the particular employment they seek.

124 Cong.Rec. 37,509 (emphasis added) (statement by Senator Williams). The use of the phrase "history or condition" can mean nothing other than that the existing condition of being an alcoholic, like a history of having been an alcoholic, is not enough alone to remove an individual from the protection of the Act. During debate it was also noted that "[m]any 'active' alcoholics ... hold jobs and perform them satisfactorily ... [T]he Rehabilitation Act protects such persons from being fired solely because of their alcoholism...." 124 Cong.Rec. 30,324 (statement of Senator Hathaway).

establish that on the date the employee was terminated, his substance abuse prevented him from performing his essential duties, or presented a danger to property or safety of others, the employee will be excluded from coverage of the Act. *Id.* Otherwise, the employee will be covered. *Contra Railway Labor Executives' Ass'n v. Burnley*, 839 F.2d 575, 591 (9th Cir.1988), *rev'd on other grounds*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (finding that since alcoholics or drug abusers who pose a threat to property or safety are not covered by the Act, "only alcoholics or drug abusers whose problems are under control are protected from discriminatory treatment"); *Burka v. New York City Transit Authority*, 680 F.Supp. 590, 597 (S.D.N.Y.1988) (finding that § 504 "protects only those otherwise qualified drug abusers who have been or are being rehabilitated"); *cf. Tinch v. Walters*, 765 F.2d 599, 603 (6th Cir.1985) (finding that a recovered alcoholic was an "otherwise qualified handicapped individual", but not addressing whether an alcoholic who was not recovered would be covered under the Act). The Sixth Circuit has not directly addressed the application of § 706(8)(B).

Defendants contend that Mackey's alcoholism presents a danger to the lives of others because he was arrested for driving while under the influence and because his job puts him in a position of authority over young men. These assertions do not address whether Plaintiff has stated a claim upon which relief may be granted. "The complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lee v. Western Reserve Psychiatric Habilitation Center*, 747 F.2d 1062, 1065 (6th Cir.1984) (citations omitted). If Mackey's allegations are not rebutted, he will satisfy the first element of a prima facie case under the Rehabilitation Act. At this stage in the proceeding, dismissal is not appropriate. Defen-

dants may bring a properly supported motion for summary judgment addressing whether § 706(8)(B) excludes Mackey from the protection of § 794.

 Defendants further argue that under the 1990 amendments to § 706, Mackey is a "current user of drugs" who is not entitled to protection under the Rehabilitation Act.[12] Defendants contend that the amended statute, effective five days after Mackey was terminated, should apply to the instant action. Since Mackey's Amended Complaint points to alcoholism as his handicap, not drug use, the 1990 amendments regarding drug use are of no significance to determining whether Mackey has stated a claim upon which relief may be granted.

After establishing that he was a handicapped person within the ambit of the Rehabilitation Act, Mackey must establish that he was qualified for the position from which he was discharged. A qualified handicapped person is one who "can perform the essential functions" of the job in question. *Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979); *Jasany*, 755 F.2d at 1250; *see also* 34 C.F.R. § 104.3(k)(1).

 Mackey claims that at no time did his alcoholism "impede or impair the satisfactory functioning of his duties and obligations as ... coach". (Amended Complaint, ¶ 73). On the other hand, Defendants claim that Mackey was not qualified for his position. (Defendant's Motion, p. 62). They contend that Mackey's actions "in and of themselves" disqualify him from the job of coach, thus denying him protection under the Act. In spite of this controversy, taking Plaintiff's assertions as true, he has presented a prima facie case that he was otherwise qualified. Defendants may file a properly supported motion for summary judgment to appropriately raise their contention that Mackey was not qualified for the position.

---

12. Under the 1990 amendments, an individual with handicaps "does not include an individual who is currently engaging in the illegal use of drugs, when a covered entity acts on the basis of such use." § 706(8)(C)(i) (1990). The amendment goes on to clarify that the exclusion of current drug users does not apply to persons who have successfully completed rehabilitation and no longer use illegal drugs, or persons currently participating in a supervised rehabilitation program. § 706(8)(C)(ii)(I) and (II).

Finally, assuming Plaintiff has established that he is an otherwise qualified handicapped person, he must also show that he was fired solely due to his alcohol abuse. Mackey claims that he "was denied benefits of various aspects of his employment at Cleveland State University by reason of his handicap." (Amended Complaint, ¶ 81). Defendants contend that "Mackey cannot prove that his job termination was the *sole* result of his handicap because his criminal conduct served as a sufficient basis, standing alone, for discharge." (Defendants' Motion, p. 56).

Defendants correctly note that the Rehabilitation Act "does not prohibit an employer from discharging an employee for improper off-duty conduct when the reason for the discharge is the conduct itself, and not any handicap to which the conduct may be related." *Richardson v. United States Postal Service,* 613 F.Supp. 1213, 1216 (D.D.C.1985) (citations omitted). However, Plaintiff's short plain statement that he was fired by reason of his handicap satisfies the liberal pleading requirement of Fed.R.Civ.P. 8(a), even though Mackey did not explicitly state that the sole reason for his firing was his handicap. Dismissal is not appropriate since it is not clear that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Defendants may file a properly supported motion for summary judgment detailing reasons other than Mackey's alcoholism to explain his discharge.

Mackey has alleged a prima facie case under the Rehabilitation Act. Again, Defendants may bring a properly supported motion for summary judgment to rebut Plaintiff's prima facie case. Defendants' Motion to Dismiss Count Fourteen is denied with regard to Defendant Cleveland State University and the Trustees, Flower, Muczyk, and Konstantinos in their official capacities. Count Fourteen is dismissed with regard to the officials in their individual capacities who have qualified immunity.

### CONCLUSION

For the foregoing reasons, Defendants' Motion to dismiss Counts One through Thirteen is granted. Count Fourteen is dismissed with regard to the individual Defendants in their individual capacities. However, Defendants' Motion to Dismiss Count Fourteen, alleging a violation of the Rehabilitation Act, is denied with regard to Cleveland State University and the individual Defendants in their official capacities.

IT IS SO ORDERED.