Ramona STEIN, Plaintiff,

v.

**KENT STATE UNIVERSITY BOARD OF TRUSTEES, et al., Defendants.**

No. 5:96CV2220.

United States District Court,
N.D. Ohio,
Eastern Division.

Feb. 18, 1998.

Robert Michael Terry, Akron, OH, Frances Dunseath, Akron, OH, for Ramona Stein, Plaintiff.

Sidney C. Foster, Jr., Brouse & McDowell, Akron, OH, Kimberly A. Kmentt, Robert F. Linton, Stephen J. Pruneski, Roderick, Myers & Linton, Akron, OH, for Defendants.

## DECISION AND ORDER

GWIN, District Judge.

On October 31, 1997, defendants filed a motion to dismiss or for summary judgment in this gender discrimination action [Doc. 68]. Defendants also have filed many discovery-related motions and the plaintiff has renewed her motion for a preliminary injunction.[1] For the reasons below, the Court grants the defendants' motion to dismiss on counts 2, 4, 6, 7, 8 and 9 of the amended complaint and grants the defendants summary judgment on counts 1, 3, and 5. The Court denies other pending motions as moot.

### I

In the fall of 1992, defendant Kent State University ("KSU") hired Plaintiff Dr. Ramona Stein as a non-tenured assistant professor of audiology. Plaintiff Stein makes claim against KSU and Dr. Peter B. Mueller, Director of the School of Speech Pathology and Audiology, Dean Thomas J. Barber (retired) of the College of Fine & Professional Arts, Dr. Irvin J. Gerling, Dr. Anthony J. Caruso, and Dr. John W. Hawks, professors in the School of Speech Pathology and Audiology. Stein's claims emanate from KSU's decision not to reappoint Stein.

In 1992, KSU appointed Dr. Stein to the university's School of Speech Pathology and Audiology ("Speech Pathology School"). The Speech Pathology School is part of the College of Fine and Professional Arts at KSU. Generally, KSU appoints untenured profes-

sors on nine-month contracts from August to May of each academic or school year. Stein had a nine-month appointment, but she did not teach during the summer.

Assistant professors go through an annual review process at the school and college level to decide whether KSU should reappoint them for the upcoming academic year. Defendant Mueller recommended to the dean that plaintiff be reappointed for school years 1993–94 and 1994–95. However, he noted problems with Stein's teaching. The College adopted the school's recommendations.

In September 1994, the Speech Pathology School evaluated Plaintiff Stein for reappointment for the 1995–96 academic year. Two Speech Pathology School committees reviewed the plaintiff's suitability, the Ad Hoc Reappointment Committee and the FAC, and Defendant Mueller, as school director. The Ad Hoc reappointment committee in 1994 was split three to three on whether KSU should reappoint Stein.[2] By a vote of five to one, the FAC recommended that KSU not reappointed Stein. Following this, Defendant Mueller recommended against reappointing Stein to Dean Barber. In making these recommendations, the committees and Dr. Mueller raised concerns about Plaintiff Stein's teaching, research and collegiality.

In October 1994, the plaintiff appealed to the College Advisory Committee ("CAC"), which recommended that Stein be reappointed. Dean Barber adopted the recommendation and reappointed Stein, but cautioned that plaintiff needed to address issues of collegiality.

Later that month Plaintiff Stein and Gans filed ethical misconduct charges with the faculty senate against Professors Bonita An-

---

1. Pending motions filed by Defendants include: motion in limine to exclude plaintiff's expert report and expert testimony [Doc. 60]; motion to extend the discovery deadline [Doc. 74]; motion in limine: plagiarism [Doc. 87]; motion in limine: alleged retaliation [Doc. 88]; motion in limine: stray remarks [Doc. 89]; motion in limine: to limit comparators [Doc. 90]; and a motion for continuance of trial [Doc. 102]. Plaintiff has filed a motion in limine to exclude evidence of a sexual harassment charge against a university professor [Doc. 96], a motion to attach additional exhibits for trial [Doc. 104], a motion for protective order and to quash a video

deposition [Doc. 107], and has renewed an earlier motion seeking a preliminary injunction [Docs. 28,86].

2. The Ad Hoc reappointment committee in 1994 consisted of Professors Richard Klich, Irvin Gerling, Bonita Andreani, Anthony Caruso, Robert Pierce and Donald Gans. In September 1994, the FAC consisted of John Hawks, Bonita Andreani, Irvin Gerling, Pam Mitchell, Anthony Caruso, Ramona Stein and Robert Pierce. Stein would not vote on this issue.

dreani, Richard Klich, Pam Mitchell, Robert Pierce and Defendants Caruso, Gerling, Hawks and Mueller. Subsequently, on February 17, 1995, the Faculty Senate Ethics Committee did not find any ethical violations.

On December 2, 1994, in a filing with KSU's Office of Affirmative Action ("AA"), Stein charged Defendants Mueller, Gerling and Hawks with gender discrimination. After receiving a detailed list of complaints from Stein, Dean Barber investigated and determined that no gender discrimination had occurred. Eventually, AA withdrew its involvement in April 1995.

In March 1995, the professors charged by Stein and Gans met with the provost about the Ethics Committee report.

In May 1995, Plaintiff Stein charged Defendant Hawks with plagiarizing her course materials. An inquiry committee on scientific misconduct investigated, held a hearing and, by a unanimous vote, found no evidence of scientific misconduct.

In May 1995, Plaintiff Stein filed charges against KSU with the federal Equal Employment Opportunity Commission ("EEOC") centered on retaliation.

In September 1995, Defendant KSU evaluated Plaintiff Stein for reappointment for the 1996–97 school year. The School's Ad Hoc Reappointment Committee voted three to one against reappointment.[3] The FAC voted six to zero against reappointment with one abstention.[4] Plaintiff Stein then appealed to the College. The CAC voted eight to two against reappointment.[5] Stein's appeals to the defendant's provost and president were unsuccessful.

In December 1995, Stein filed another EEOC charge against KSU for retaliation.

In October 1996, Plaintiff Stein sued after receiving a Right to Sue letter from the EEOC. She amended her complaint[6] after receiving another EEOC Right to Sue letter on another charge.

The plaintiff makes the following claims in her amended complaint:

(1) Gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq;*

(2) gender discrimination violating Ohio Revised Code §§ 4112.02(A) and 4112.99;

(3) retaliation under Title VII in subjecting plaintiff to a hostile work environment;

(4) retaliation by creating a hostile work environment and denying reappointment in two consecutive years after the plaintiff filed two EEOC charges violating Ohio Rev.Code § 4112.02;

(5) deprivation of the plaintiffs constitutional rights to free speech, freedom of association, and equal protection under 42 U.S.C. § 1983;

(6) conspiracy to violate the plaintiff's rights to equal protection under 42 U.S.C. § 1985(3);

(7) neglect to prevent conspiracy under 42 U.S.C. § 1986;

(8) state defamation claim; and

(9) violation of the plaintiff's rights to procedural due process under the Fifth and Fourteenth Amendments.

Stein sued individual defendants only in their official capacities.[7]

Stein sues for reinstatement, declaratory and injunctive relief, $750,000 in compensato-

---

**3.** Members were Donald Gans, Irvin Gerling, Bonita Andreani and Robert Pierce. The record indicates that Professor Gans voted in favor of Stein's reappointment.

**4.** The FAC members were Robert Pierce, Irvin Gerling, John Hawks, Bonita Andreani, Pam Mitchell, Lynn Rowan and Anna Schmidt.

**5.** The CAC consisted of 11 members, four of whom were women.

**6.** The amended complaint docketed in the clerk's office and in this case's court file is not signed,

though one of plaintiff's attorneys has signed an attached certificate of service.

**7.** Stein used KSU's address for the defendants in her complaint and amended complaint. She referred to Barber as the Dean and Mueller as the Director of the Speech Pathology School "at all times relevant." She refers to Defendants Gerling, Hawks and Caruso as professors "at all times relevant." Never does she assert that anyone acted outside the scope of their authority.

ry damages, $250,000 in future damages, punitive damages, and attorneys' fees and costs.

## II

When deciding a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and definitively determine whether the plaintiff is unable to prove any set of facts in support of her claim entitling her to relief. *Andrews v. State of Ohio*, 104 F.3d 803, 806 (6th Cir. 1997); *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993) (citations omitted).

■ The Court notes that defendants filed this motion to dismiss on October 31, 1997, well after defendants had filed answers to both the original complaint and the amended complaint.[8] However, both answers did reserve the defense of failure to state a claim upon which relief could be granted. *See Cleveland Indus. Square, Inc. v. White*, 52 F.3d 324 (TABLE) (6th Cir.) (affirming district court's granting of motion to dismiss filed in October 1992 after parties had answered complaint in August 1992 raising a Rule 12(b)(6) defense), *cert. denied*, 516 U.S. 986, 116 S.Ct. 513, 133 L.Ed.2d 422 (1995).

While normally a party must file a Rule 12(b)(6) motion before filing an answer, or simultaneously with filing the responsive pleading, "courts have allowed untimely motions if the defense has been previously included in the answer." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1361 (1990).

## III

■ The Eleventh Amendment to the federal Constitution[9] bars an action for retrospective relief against a state in federal court. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 103, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Edelman v. Jordan*, 415 U.S. 651, 678, 94 S.Ct. 1347, 39 L.Ed.2d

662 (1974). This amendment also applies to litigation brought by citizens of the state being sued and by citizens of another state. *Edelman*, 415 U.S. at 662–63. Absent a state waiver or congressional override, a federal court is without jurisdiction to hear a claim against a state. *Mackey v. Cleveland State University*, 837 F.Supp. 1396, 1403 (N.D.Ohio 1993) (citations omitted).

■ This Court may hear a Title VII claim against a state in a federal court. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (Eleventh Amendment does not bar an award of back pay since limited by enforcement provisions of § 5 of the Fourteenth Amendment). *See also Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58–60, 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996) (§ 5 of the Fourteenth Amendment allows Congress to abrogate immunity from suit guaranteed by Eleventh Amendment).

■ The State of Ohio has not waived its Eleventh Amendment immunity. A waiver is only found "where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Mackey*, 837 F.Supp. at 1403; *Edelman*, 415 U.S. at 673. A state maintains Eleventh Amendment immunity from suit in federal court though it has waived its immunity from liability and consented to be sued in its own courts. *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 465, 65 S.Ct. 347, 89 L.Ed. 389 (1945). The State of Ohio has waived its immunity from suit and consented to having its liability determined by the state Court of Claims. O.R.C. § 2743.02(A)(1). However, § 2743.02(A)(1) is not a waiver of immunity from suit in federal court. *Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir.1985), *cert. denied*, 474 U.S. 824, 106 S.Ct. 79, 88 L.Ed.2d 65 (1985); *Harley v. Carman*, 585 F.Supp. 1353 (N.D.Ohio 1984). Enactment by the Ohio legislature of

---

8. Defendants filed their first answer on November 12, 1996 [Doc. 6], and filed their answer to the amended complaint on April 9, 1997 [Doc. 30].

9. The Eleventh Amendment reads: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State."

§ 4112.01 *et seq.,* the anti-discrimination statute, did not explicitly abrogate the state's Eleventh Amendment immunity from suit in federal court. It simply authorized suit of the state as employer in a court of competent jurisdiction, which in Ohio is limited to the Court of Claims. *See* O.R.C. chapter 2743; *Mackey,* 837 F.Supp. at 1403.

The Eleventh Amendment is not violated, however, where the relief sought against the state or state officials in their official capacities is prospective, such as Plaintiff Stein's request here for reinstatement. *Edelman,* 415 U.S. at 677; *Pennhurst,* 465 U.S. at 102–03; *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Futernick v. Sumpter Tp.,* 78 F.3d 1051, 1055 (6th Cir. 1996) (Eleventh Amendment immunity does not bar injunctive relief against state officials for violations of federal law). While the Eleventh Amendment does not bar suits in federal courts for either injunctive or monetary relief against state officials sued as individuals, *Mackey,* 837 F.Supp. at 1404, Stein did not sue any of the defendants in their individual capacities. (See footnote 7.)

■ The Eleventh Amendment then bars plaintiffs claims for damages on all the non-Title VII claims brought in her amended complaint. Relief requested is limited to reinstatement, and possibly an injunction governing the future conduct of the defendants.

### IV

In count 6 of her amended complaint, Stein claimed the defendants conspired violating 42 U.S.C. § 1985(3) to violate her rights to equal protection. In count 7, Stein claimed that the defendant university neglected to prevent the conspiracy charged in count 6 and brought this claim under 42 U.S.C. § 1986.

The Court finds these claims also fail on grounds other than the Eleventh Amendment.

■ The Supreme Court has held that a litigant may not bring a claim under § 1985(3) to redress violations of Title VII. *Great American Federal Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). Otherwise, a litigant

could avoid most of the administrative processes and limitation periods of Title VII. *Id.* at 375–76. The high court also said that § 1985(3) created no rights. *Id.* at 376.

This § 1986 claim also fails because the plaintiff does not have a valid claim under § 1985(3). *Mackey,* 837 F.Supp. at 1409.

Therefore, plaintiffs request for damages in counts 6 and 7 must be dismissed for the reasons cited in sections III and IV of this opinion.

### V

Plaintiff Stein has conceded the defendants' argument that this Court lacks subject matter jurisdiction over her state claims of gender discrimination, retaliation, and defamation. *See Mackey,* 837 F.Supp. at 1409–10. Because of plaintiffs waiver, the Court will grant the defendants' motion to dismiss counts 2, 4, and 8 of her amended complaint.

### VI

In count 9 of her amended complaint, Stein alleges that defendants violated her rights to procedural due process under the Fifth and Fourteenth Amendments. In this count, Plaintiff Stein says they accused her of intimidation and filing frivolous complaints against members of the School of Speech Pathology and Audiology. She says the defendants approached defendant KSU's provost for academic affairs in early 1995 and made their allegations of intimidation against the plaintiff. She complains that the provost failed to investigate or give the plaintiff notice and an opportunity to refute said charges. She says they have circulated the charges throughout the university and to prospective employers. Stein claims her discharge without the opportunity for a hearing infringes upon her liberty interest in future employment, amended complaint ¶¶ 91–96.

The Fifth Amendment does not apply to the states and her claim must rest on the Fourteenth Amendment. *Sharp v. Kelsey,* 918 F.Supp. 1115, 1121 (W.D.Mich.1996).

■ Apart from the bar of the Eleventh Amendment, a litigant does not have a cause of action arising directly under the Constitu-

tion when Congress has provided a statutory remedy under which the plaintiff could vindicate her rights. *Thomas v. Shipka*, 818 F.2d 496, 500 (6th Cir.1987), *vacated and remanded on other grounds*, 488 U.S. 1036, 109 S.Ct. 859, 102 L.Ed.2d 984 (1989). Defendants argue count 9 should be dismissed because Stein has a remedy under 42 U.S.C. § 1983, though that statutory remedy is subject to dismissal here.

Further, KSU and the individual defendants are immune from a suit for damages based on the Fourteenth Amendment (analogous to the cause of action for damages based on the Fourth Amendment recognized in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)). *Bailey v. Ohio State University*, 487 F.Supp. 601, 606 (S.D.Ohio 1980) (Congress did not grant federal question jurisdiction to the courts pursuant to the Fourteenth Amendment, and a federal court lacks similar power to abrogate Eleventh Amendment immunity by recognizing a damage remedy for a constitutional wrong).

■ Under the Fourteenth Amendment one has the right to work and earn a living. When the government dismisses a person for reasons that might seriously damage her standing in the community, she is entitled to notice and a hearing to clear her name. *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). However, to deprive one's constitutional rights, the reasons for dismissal must denigrate the individual so I severely that she cannot find other employment. *Id.* Dismissal on charges reflecting one's good name, reputation, honor

and integrity may infringe on liberty interests. *Id.* In other words, the charges must involve dishonesty or immorality. A dismissal for reasons of incompetence and inability to get along with co-workers does not amount to infringement of liberty interests. *Ludwig v. Bd. of Trustees of Ferris State University*, 123 F.3d 404, 410 (6th Cir.1997).

In *Ludwig*, the Sixth Circuit described the allegations required to bring an action under § 1983.[10] In *Ludwig*, a state college dismissed a coach after finding the coach had used a derogatory term to describe a Polish student's nationality, and then had continued using derogatory comments after being warned several times. The Sixth Circuit found college representative's statements of improper or inadequate performance, incompetence, neglect of duty or malfeasance were insufficient to sustain a cause of action under § 1983. A charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not deprive liberty. To implicate the Due Process Clause, the employer must have made a statement during the employee's discharge that might seriously damage her standing and associations in her community or that might impose on her a stigma or other disability that would foreclose the freedom to take advantage of other employment opportunities. *Id.* A moral stigma such as immorality or dishonesty is required to show a deprivation of liberty. *Roth*, 408 U.S. at 573.

A dismissal from employment for reasons of incompetency and inability to get along with co-workers does not amount to infringe-

10. In *Ludwig*, the Court described the allegations required:
A liberty interest in one's reputation is implicated, therefore, only when five elements are satisfied. First, the stigmatizing statements must be made in conjunction with the plaintiffs termination from employment. Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance. "A charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation." Rather, to implicate the Due Process Clause, the employer must have made a statement in the course of the employee's discharge "that might

seriously damage his standing and associations in his community" or that might impose "on him a stigma or other disability that [would] foreclose[ ] his freedom to take advantage of other employment opportunities." A moral stigma such as immorality or dishonesty is required to show a deprivation of liberty. Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary. If the above requirements are met, the employee is entitled to notice and an opportunity to be heard through a name-clearing hearing. *Ludwig*, 123 F.3d at 410 (citations and footnotes omitted).

ment of a liberty interest. *Little v. Federal Reserve Bank of Cleveland*, 601 F.Supp. 1372, 1375 (N.D.Ohio 1985). To rise to the level of a deprivation of a protected liberty interest in this employment context, a plaintiff must show "stigmatizing governmental action that so negatively affects his or her reputation that it effectively forecloses the opportunity to practice a chosen profession." *Joelson v. U.S.*, 86 F.3d 1413, 1420 (6th Cir. 1996). *See also Damsel v. Fisher*, 114 F.3d 1187 (TABLE) (6th Cir.1997), No. 96–3622, 1997 WL 328607 *3.

▪ The plaintiff fails to make any allegation rising to the level of a "stigmatizing governmental action." Plaintiff Stein says that defendants approached defendant KSU's provost and accused Stein of intimidation against them. Even if proven, this allegation does not denigrate Stein so severely that she cannot find other employment.

For all these reasons, the Court will grant defendants' motion to dismiss count 9 of the amended complaint.

## VII

A Rule 12(b)(6) motion to dismiss may be converted into a summary judgment motion "if matters outside the pleading are presented to and not excluded by the court." Fed. R.Civ.P. 12(b)(6). *Plassman v. City of Wauseon*, 85 F.3d 629 (TABLE) (6th Cir.), No. 95–3736, 1996 WL 254662 (finding district court erred in converting motion to dismiss into motion for summary judgment because parties did not present matters outside the pleadings but remand not required as plaintiffs failed to state claim upon which relief could be granted), *cert. denied*, — U.S. ——, 117 S.Ct. 513, 136 L.Ed.2d 402 (1996).

The Court also notes that defendants not only exceeded the page limitation for their dispositive motion,[11] but also filed an appendix of some 130 pages containing affidavits, depositions, exhibits, case law, and an organizational chart of the KSU committees, more than enough material to convert the motion into one for summary judgment.

Review of summary judgment motions is controlled by Fed.R.Civ.P. 56(c), which provides in part that

> [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment is not proper if there is a material dispute over the facts, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Sixth Circuit has recognized that *Liberty Lobby, Celotex and Matsushita* effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir.1989). In responding to a proper motion for summary

---

11. The clerk docketed the motion to dismiss and/or for summary judgment with brief as being comprised of 44 pages. According to the local court rules, memoranda relating to dispositive motions shall not exceed 20 pages for "standard" cases without prior approval of the Judicial Officer for good cause shown. Loc. Ct. R. 7.1(g). The docket does reflect that Judge O'Malley granted defendants permission to extend to 33 pages their brief in support of summary judgment. Otherwise the docket does not reflect that counsel ever sought leave of court for their voluminous filings. Besides the 44–page motion and brief, and the 130–page appendix, defendants also filed a 52–page reply brief to the plaintiffs response (and plaintiffs response unhappily totalled 364 pages when all its attached exhibits were counted by the clerk).

judgment, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* at 1479 (quoting *Liberty Lobby,* 477 U.S. at 257.) The nonmoving party must introduce more than a scintilla of evidence to overcome the summary judgment motion. *Street,* 886 F.2d at 1479. It is also not sufficient for the nonmoving party merely to "show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586. Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street,* 886 F.2d at 1479. That is, the nonmoving party has an affirmative duty to direct the court's attention to specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

This line of cases emphasizes the point that when one party moves for summary judgment, the nonmoving party must take affirmative steps to rebut the application of summary judgment. *Fulson v. City of Columbus,* 801 F.Supp. 1, 4 (S.D.Ohio 1992) (quoting *Street,* 886 F.2d at 1478).

In *Mitchell v. Toledo Hosp.,* 964 F.2d 577 (6th Cir.1992), the Sixth Circuit emphasized the showing required to defeat summary judgment.

The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a *preponderance of evidence* that the plaintiff is entitled to a verdict....

The "mere possibility" of a factual dispute is not enough. Rather, in order to defeat summary judgment a plaintiff "must come forward with more persuasive evidence to support [his or her] claim than would otherwise be necessary." Where the defendant demonstrates that after a reasonable period of discovery the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted. 964 F.2d at 581–82 (citations omitted).

## VIII

Count 5 of Stein's amended complaint is based on the Equal Protection Clause and the First Amendment and brought under § 1983. She asserts that defendants Barber and Mueller used administrative procedures to facilitate discrimination, that KSU acted indifferently in investigating her charges, and that they penalized her when she spoke out on "public concerns" of sex discrimination and ethical violations. Stein also complained of plagiarism.

The Eleventh Amendment bars any claim under Count 5 for damages or retrospective relief, though Stein may still maintain this claim in federal court for prospective relief. (See discussion of Eleventh Amendment in section III of this opinion.)

■ While § 1983 prohibits persons under color of state law from depriving litigants of their rights under the Constitution and federal law, the Court notes that Defendant KSU and the named defendants sued in their official capacities are not considered "persons" for purposes of § 1983 litigation. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

■ While § 1983 may protect a plaintiff's right to equal protection under the Fourteenth Amendment, it does not cover retaliatory employment actions already covered by Title VII. *Oldfather v. Ohio Dept. of Transp.,* 653 F.Supp. 1167, 1180 (S.D.Ohio 1986). Stein's § 1983 claim for gender discrimination and equal protection fails because the record shows no evidence of intentional discrimination. (See section X of this opinion for greater detail.) While Stein can bring a First Amendment claim under § 1983, this claim too is without merit as a matter of law.

To bring a First Amendment claim under § 1983, the plaintiff must prove that her speech was constitutionally protected, a "sub-

stantial factor" in the defendant's decision not to rehire, and that the defendant would have made the same decision even without the protected speech. *Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

Plaintiff Stein has difficulty in meeting the first prong of this test. A discharge from employment implicates the First Amendment only if the plaintiff's speech can be considered "protected speech," meaning that it could be "fairly characterized as constituting speech on a matter of public concern." *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

For speech to be a matter of public concern, it must be related to political or social concerns of the community. *Id.* In the normal course of events, the First Amendment does not protect a public employee who speaks as an employee on matters of personal interest. *Id.* at 147. Whether speech is a matter of public concern is a question of law. *Id.* at 148 n. 7.

The Sixth Circuit affirmed summary judgment to a state agency employer and held that the employee's complaint of retaliation for filing a discrimination charge was a personal grievance and not protected speech. *Rice v. Ohio Dept. of Transp.*, 887 F.2d 716, 721 (6th Cir.1989), *vacated on other grounds*, 497 U.S. 1001, 110 S.Ct. 3232, 111 L.Ed.2d 744 (1990). In Stein's response to the summary judgment motion, she has shown nothing in the record to lead this Court to find "protected speech," rather than a personal grievance, was at issue in this litigation.

### IX

Plaintiff Stein says defendants discriminated against her violating Title VII of the Civil Rights Act of 1964. Under 42 U.S.C. § 2000e–2(a)(1), it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to . . .

compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . ."

Here, Plaintiff Stein gives no direct evidence of gender discrimination.[12] Having no direct evidence of discrimination, Stein must make the showing described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

In *Kline v. Tennessee Valley Auth.*, 128 F.3d 337 (6th Cir.1997), the Sixth Circuit described the showing required under *McDonnell Douglas:*

> When a plaintiff attempts to establish its case using the *McDonnell Douglas– Burdine* paradigm, the evidence which establishes the *prima facie* case is extremely important. In order to prove a *prima facie* case of discrimination, a plaintiff must show: 1) that he is a member of a protected group, 2) that he was subject to an adverse employment decision, 3) that he was qualified for the position, and 4) that he was replaced by a person outside of the protected class.

*Kline*, 128 F.3d at 349 (citations omitted).

The *McDonnell Douglas* framework consists of three stages. At the first stage, the plaintiff must establish a *prima facie* case that the employer discriminated against her. Second, the employer can produce evidence of a legitimate, nondiscriminatory reason for its action. Finally, the plaintiff attempts to discredit the employer by proving that the employer's reason was a pretext for discrimination. *Id.* at 342.

A *prima facie* case requires the employer to go forward with evidence of a nondiscriminatory intent. The *prima facie* case creates a presumption that discrimination was the real motive for the employment action. In *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978) the Court explained this:

> [W]e are willing to presume this largely because we know from our experience that more often than not people do not act in a

---

**12.** The *McDonnell Douglas* formula is inapplicable, however, to cases in which the Title VII plaintiff presents credible, direct evidence of discriminatory animus. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct.

613, 83 L.Ed.2d 523 (1985); *Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 707 (6th Cir.1985), *cert. denied*, 490 U.S. 1064, 109 S.Ct. 2062, 104 L.Ed.2d 627 (1989).

totally arbitrary manner, without any underlying reasons, especially in a business setting. Thus, when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with some reason, based his decision on an impermissible consideration such as race. 438 U.S. 567 at 577, 98 S.Ct. 2943, 57 L.Ed.2d 957.

Since the *prima facie* case creates a presumption of discrimination, if the employer fails to respond to the *prima facie* case and if the trier of fact believes the plaintiffs *prima facie* evidence, then the plaintiff will receive judgment. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Disbelief of the defendant's proffered reasons does not compel a court to enter judgment for the plaintiff. *Id.; Kline,* 128 F.3d at 343–44, 347 ("will permit" a finding of discrimination) (*Hicks* adopts "permissive pretext" approach rather than Sixth Circuit's "pretext plus" approach to earlier employment discrimination analysis). Only the burden of production shifts to the employer; at no time does the defendant need to persuade the trier of fact that "it was actually motivated by the proffered reasons." [13]

The Title VII plaintiff keeps the burden of persuasion. *Hicks,* 509 U.S. at 511. The burden of production shifts back to the plaintiff, if the defendant proffered reasons, and the plaintiff must persuade the trier of fact that the employer's articulated reasons are a "pretext." *Kline,* 128 F.3d at 342. Any presumption generated by the *prima facie*

case drops out of the case. *Hicks,* 509 U.S. at 510–11.

To prove that defendant's reasons are pretextual, the plaintiff must show that the reasons have no basis in fact, that the reasons did not in fact motivate the discharge, or, if they were factors in the defendant's decision, that they were jointly insufficient to motivate the discharge. *Maddox v. University of Tennessee,* 62 F.3d 843, 848 (6th Cir.1995) (showing pretext under Rehabilitation Act); *Chappell v. GTE Prods. Corp.,* 803 F.2d 261, 266 (6th Cir.1986) (showing pretext in age discrimination suit), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987).

To prove retaliation, Plaintiff Stein must prove: (1) that she engaged in activity protected by Title VII; (2) that she was subject to adverse employment actions; and (3) that there is a causal connection between the protected activity and the adverse employment action. *Equal Employment Opportunity Comm'n v. Ohio Edison Co.,* 7 F.3d 541, 543 (6th Cir.1993).

## X

Plaintiff Stein's remaining claims in counts 1 and 3 of her amended complaint can only be brought against Defendant KSU. The other named defendants have valid defenses to liability. An individual employee or supervisor, who does not otherwise qualify as a statutory "employer" for purposes of federal civil rights law, may not be found personally liable under Title VII of the Civil Rights Act of 1964. *Wathen v. General Elec. Co.,* 115 F.3d 400, 405 (6th Cir.1997). *See also Czupih v. Card Pak Inc.,* 916 F.Supp. 687, 689–

---

**13.** In *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Court explained this:

The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiffs To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiffs rejection. The explanation pro-

vided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's *prima facie* case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions. 450 U.S. at 255–56 (citations and footnotes omitted) (emphasis added).

91 (N.D.Ohio 1996). Courts have found that supervisors, even when the law could consider them an employer's agent and thus a statutory "employer" for purposes of liability, are not personally liable under Title VII and similar state laws. Various rationales support this result including the majority view in the case law, Congress's legislative intent, and the entire statutory scheme focused on remedial provisions said to be incompatible with imposing liability on individual employees. *Wathen*, 115 F.3d at 405–06.

The committee votes recommending against continued employment did not split along gender lines. See *Brousard–Norcross v. Augustana College Ass'n*, 935 F.2d 974, 978 n. 7 (8th Cir.1991).

■ Plaintiff Stein does not show evidence of gender discrimination. For example, Stein complains about criticism she received. The exhibit she provided showed that both Stein and a male professor received similar admonishments for "unprofessional behavior." Stein complains about not getting lab space and having to share lab space. Still, she admits that when she arrived at KSU in 1992 there was no empty space within the department for a lab. She eventually was assigned lab space and never had to share lab space. Stein complains that they criticized her for networking on her computers. Still, she admits a male faculty member received similar criticism. She also complains that KSU denied her a seminar, but said in deposition that she taught a seminar each full year, unless she was on leave doing research.

■ The Court finds Plaintiff Stein has not made out a *prima facie* case of gender discrimination. Yet even if she had, the Court finds Stein has not shown the university's proffered reasons for denying tenure were pretextual.

Stein claims her lack of collegiality is a pretext for discrimination. While Title VII is available to aggrieved professors, this Court reviews professorial employment decisions with care. See *Fields v. Clark Univ.*, 966 F.2d 49, 54 (1st Cir.1992), *cert. denied*, 506 U.S. 1052, 113 S.Ct. 976, 122 L.Ed.2d 130 (1993). Courts do not sit as a super personnel council to review tenure decisions. The Court's review is narrow, being limited to determining whether KSU denied the appointment or promotion because of a discriminatory reason. Title VII is not a vehicle for substituting the judgment of a court for that of the employer. Title VII is not a medium through which the judiciary may impose professorial employment decisions on academic institutions. The ability to get along with co-workers, when not a subterfuge for sex discrimination, is a legitimate consideration for tenure decisions. Plaintiff Stein makes no showing that the lack of collegiality was a pretext.

As described, it is not the function of a federal court to serve as some kind of "super-tenure" committee. See *Villanueva v. Wellesley College*, 930 F.2d 124, 129 (1st Cir.), *cert. denied*, 502 U.S. 861, 112 S.Ct. 181, 116 L.Ed.2d 143 (1991). In an exhibit attached to the defendants' motion is a September 1995 memo from Defendant Mueller to Defendant Barber explaining why the various academic committees recommended KSU not reappoint Plaintiff Stein as an assistant professor in the Speech Pathology School.

Mueller summarized Stein's teaching or instructional performance as average. Under the research and scholarship heading, Mueller wrote, in part, that since her last reappointment review "the quantity and quality of published material has changed little. All of her publications and presentations are multiple authored. She needs to publish more material of a traditional data-based nature reflective of her abilities as an independent researcher.... As in last year's evaluations, concerns have been expressed ... that her research/productivity output is based mostly on collaborative efforts and that she has failed to demonstrate that she is capable of being an independent researcher." She received a satisfactory rating for service.

However, Mueller said reappointment was not being recommended as Stein "has continued to exhibit a consistently negative pattern of behavior that has undermined the well-being of the unit." What he wrote immediately preceding the recommendation of the committees and his own recommendation.,

and reprinted here in the margin, was based squarely on collegiality and not gender discrimination.[14] There is no indication in the record that the provost or KSU's president considered plaintiffs gender in considering and denying her appeals of the decision not to rehire Stein, except plaintiffs assertion that neither could have been unaware of her gender-based complaints. *See Garvey v. Dickinson College,* 775 F.Supp. 788, 798 (M.D.Pa.1991) (lack of collegiality one of reasons court found college had legitimate non-discriminatory reason for not rehiring a female professor who brought Title VII action).

Stein was not qualified for reappointment in 1995 and so cannot establish her *prima facie* case. Defendants have legitimate non-discriminatory reasons for not reappointing her. No evidence shows that gender motivated the decision not to reappoint.

Stein cannot establish a causal connection for her retaliation claim. In *Garvey,* the plaintiff alleged that Dickinson retaliated against her by refusing to renew her teaching contract because she reported alleged sexual harassment. In *Garvey,* the defendant showed the plaintiff had performance troubles, and an inability or unwillingness to cooperate and work effectively with other department members. The Court found that Title VII does not protect employees from harsh or unfair employment actions or mistakes, but only from employment actions based on unlawful considerations. *Id.* at 797. The *Garvey* court found that the college could consider her "inability to cooperate productively with her colleagues." *Id.* at 798.

Likewise in Stein's case, the record fails to show they would have reappointed her but for her gender or her filing a complaint of gender discrimination, or her exercise of "protected speech." The Court finds there are no disputes about material factual issues

here. Dr. Mueller, the Director of the School of Speech Pathology and Audiology, cited to plaintiffs "filing internal and external suits and charges that *have been* consistently *judged* as frivolous." Alone, this does not show material issues showing retaliation, when the memo is read in context and in view of all the evidence submitted on this motion. *See id.* at 797–99 (evidence not sufficient to support claim of retaliation and court reluctant to second-guess college administration). The plaintiff fails to show, or even to suggest, that she was a good candidate for reappointment to the Speech Pathology School faculty.

### XI

For the reasons outlined above, the Court grants the Defendants' motion to dismiss counts 2, 4, 6, 7, 8 and 9 of the amended complaint and grants defendants summary judgment on counts 1, 3 and 5. The pending motions mentioned in the margin at footnote 1 are all denied as moot.

IT IS SO ORDERED.

---

14. Mueller wrote that "[m]ajor concerns have again been raised regarding Dr. Stein's personal interactions with the majority of the faculty. Her continued history of filing internal and external suits and charges that have been consistently judged as frivolous has put undue stress on the majority of the School's faculty. A number of faculty members have voiced concerns about serving on committees with Dr. Stein in fear of being subjected to some form of retaliatory ac-

tion if they openly expressed their views. In addition, she has engaged in unethical and unprofessional conduct by contacting the editor of one of our major professional journals inquiring about the status of papers submitted by her colleagues. Although she has been informed and cautioned repeatedly, Dr. Stein tends to ignore established procedures and, when given the opportunity to resolve issues of conflict, appears not to be interested in collegial resolutions."